# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| **STANLEY PLUMP, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **3:17CV238-PPS** |
| | ) | |
| **NANCY BERRYHILL, Acting Commissioner** | ) | |
| **of the Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Stanley Plump, Jr. appeals the denial of his application for disability insurance

benefits by the Commissioner of the Social Security Administration.  Plump was 38

years old on the alleged onset date of his disability, December 1, 2012.  The

administrative law judge found that he had severe impairments of rheumatic heart

disease, status-post mitral valve replacement, and anxiety.  [AR at 24.][1]  He previously

worked as a furnace helper and a waste collector, and at the time of his hearing before

the ALJ on November 5, 2015, continued to work part-time as a janitor at a steel mill.

The ALJ issued a written decision denying Plump's claim for benefits on December 28,

2015.  [AR 21-33.]  The ALJ concluded that Plump's severe impairments do not

conclusively establish disability and further found that Plump possessed the residual

functional capacity to perform sedentary work with certain limitations. The ALJ then

---

[1]  The administrative record [AR] is found in the court record at docket entry 10, and consists of 1180 pages.  A supplemental record of 221 pages is found at docket entry 30.  I will cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

found that Plump was capable of performing jobs that exist in significant numbers in the national economy, and that he is, therefore, not disabled. [AR at 27, 32-33.]

Plump asks me to reverse the ALJ's decision and remand for further proceedings by the Social Security Administration. My review of the ALJ's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

It's worth noting that "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015), quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). In other words, the ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

**Analysis**

**Obesity**

Plump challenges the ALJ's handling of his obesity. I find no error. The ALJ does not ignore Plump's weight, noting that he is 5'9" tall and weighs 209 pounds, with a body mass index of 30.86 that puts him in the Level 1 obesity category. [AR at 27.] I note that this is only barely within the lowest (BMIs of 30.0 - 34.9) of three levels of obesity under the applicable guidelines. SSR 02-1p, citing *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults* (NIH Publication No. 98-4083, September 1998).

The issue regarding Plump's obesity seems to have come out of nowhere. His application for benefits did not claim disability based on obesity, and the issue was not referenced in his hearing before the ALJ. What's more, Plump cites no evidence – medical or otherwise – that his weight impacted his functioning or was a disabling impairment. On this record, I see no basis for requiring the ALJ's decision to do more than it did, namely acknowledge that Plump met the guidelines for a very low level of obesity, and indicate that the ALJ "fully considered" the cumulative effects of Plump's obesity but found it to have no more limiting effect on his ability to work than contemplated by the sedentary RFC. [AR at 27.] Where the ALJ considered the impact of marginal obesity — even despite the fact that the claimant "did not specifically claim obesity as an impairment (either in his disability application or at his hearing)," — and where the claimant does not "specify how his obesity further impaired his ability to

work," I readily find that any remand for more explicit and detailed consideration of obesity is unnecessary and would not affect the outcome of the case. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). *See also Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006).

## Mental Functioning

Next Plump seeks a remand based on the ALJ's handling of his mental functioning. Like the issue of obesity, Plump's application for benefits made no claim of mental impairments. Psychological issues were first raised at the hearing, at which Plump's counsel reported that Plump had been receiving counseling. But counsel expressly stated that "We don't believe, and we're not arguing, Judge, that depression would be sufficient for him to be found disabled," and "I don't think it affects his thinking, to the point that that would interfere with his ability to function." [AR at 55.]

Because the record of medical sources is devoid of any reference to anxiety or other mental health problems, the ALJ apparently based his determination that Plump has a severe impairment of anxiety on Plump's hearing testimony (which was scant on the subject) and the opinions of a counselor, Susan Geist, whom Plump and his wife had been seeing through his church. Contrary to Plump's argument, the ALJ did not reject Geist's opinion. The parties agree that Geist is not a "medically acceptable source" under 20 C.F.R. §404.1513(a) and §416.913(a), but the ALJ nonetheless afforded her opinions "some weight," based on her provision of counseling services to Plump for some months leading up to the hearing. [AR at 30.]

4

Plump's other arguments concerning anxiety – that the ALJ erred in his analysis of its equivalence to a listed impairment and in devising accommodations in the RFC – are non-starters. First of all, the claimant has the burden of showing medical equivalence. "[T]he burden of proof at step 3 rests with the claimant, and the ALJ has no duty to analyze equivalance when the claimant...presents no substantial evidence of it." *Eskew v. Astrue*, 462 Fed.Appx. 613, 616 (7th Cir. 2011). *See also Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). Plump's 11th-hour references to anxiety (and non-medically acceptable evidence on the subject) was not substantial evidence of listing equivalence.

Plump contends that the ALJ was required to consult a medical expert designated by the Commissioner on the issue of equivalence. But it's a "*finding of medical equivalence*" (not a rejection of medical equivalence) that "requires an expert's opinion on the issue." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (emphasis added). Far from a perfunctory analysis of the equivalence issue, the ALJ carefully sets out the requirements of Listing 12.06 for anxiety-related disorders and explains his conclusions, with reference to the evidence of record, that Plump's anxiety does not satisfy or medically equal the Listing's criteria. [AR at 26.]

## Residual Functional Capacity

Plump contends that the RFC limiting him to simple routine repetitive tasks involving only occasional interaction with the public and co-workers is "insufficient." [DE 24 at 31.] What evidence does Plump direct me to that this does not capture all of his limitations? He points only to Geist's opinion (which, by the way, was not part of

the record until *after* the hearing and so was not available to the ALJ when he formed the hypotheticals for the vocational expert). Even crediting the entirety of Geist's assessment, she speaks repeatedly and primarily of Plump having difficulty coping with work-related stress. [AR at 1174-75.] These comments do not address the disability buzzwords of "concentration, persistence, or pace" to which Plump's arguments refer. On those subjects, Geist opines that Plump *is* able to "understand, remember, and carry out complex, not complex, or simple job instructions" (apparently all three). [AR at 1174.] She merely expresses the view that Plump's mental and emotional symptoms could reasonably be expected to "slow[] him down" in completing tasks in a timely manner. [AR at 1175.]

The ALJ did find, in his Step 3 analysis, that Plump had "moderate difficulties" with regard to concentration, persistence, or pace. [AR at 26.] But in the next paragraph, he also found that Plump "has no impairment of recent or remote memory with normal attention span and ability to concentrate." [*Id*.] The ALJ also notes that at the hearing, Plump "was able to understand, focus, concentrate, comprehend, respond, communicate, pay attention, and remember adequately without medication." [*Id*.] Plump does not now identify any evidence supporting a greater degree of mental limitation than to "simple routine repetitive tasks."

As for interactions with others, Geist notes that Plump is himself a supervisor and experiences stress in that role when "co-workers come to him with work-related problems." [AR at 1174.] Based on this opinion, the ALJ quite reasonably (even

6

generously) included in the RFC a limitation on interaction with the public and co-workers. Plump's complaint that the ALJ included no restriction on his ability to work with supervisors is not based on any evidence that Plump arguably requires such a limitation, and is rejected out of hand.

**Reliance on State Agency Medical Consultants**

Next in Plump's litany of alleged errors by the ALJ is his reliance on a State Agency medical consultant whose December 9, 2013 opinion Plump characterizes as outdated and incomplete. [DE 24 at 34; AR at 90.] The ALJ's hearing was in November 2015 and his decision in December 2015. There was another State Agency consultant opinion in February 2014. [AR at 107.] All three found that Plump retained the RFC to perform sedentary work. [AR at 27, 89, 106.] But the ALJ also considered the entire medical record, including what occurred after the later of the two State Agency reports, so his ultimate opinion took into account all that Plump now complains was missed. [AR at 28-30.]

Plump does not allege that any new or worsening condition occurring in the interim rendered him disabled. He does not identify medical evidence in the record that contradicts the State Agency physicians' conclusions, or "specifically point to any evidence in subsequent records that would indicate greater functional limitations than the ALJ found." [DE 31 at 14.] To the contrary, as noted by the Commissioner, the medical record reflected stability in Plump's heart condition, the principal basis for his

disability application.  [DE 31 at 13.]  Plump shows no reversible error in the ALJ's analysis of the State Agency physician opinions.

## Credibility Findings

Plump next challenges the ALJ's assessment of his credibility.  Because the ALJ is "in the best position to determine a witness's truthfulness and forthrightness," reviewing courts "will not overturn an ALJ's credibility determination unless it is 'patently wrong.'"  *Skarbek v. Barnhart*, 390 F.3d 500, 504, 505 (7th Cir. 2004) (quotations omitted).  When an ALJ assesses a claimant's credibility, she must "consider the entire case record and give specific reasons for the weight given to the individual's statements."  *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (internal quotations omitted).  Now that the matter is before me for review, I "merely examine whether the ALJ's determination was reasoned and supported."  *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012), quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In weighing Plump's testimony concerning his mental health, the ALJ found that Plump's statements were "less credible because the level and/or frequency of treatment are inconsistent with the level of complaints," noting that Plump had received counseling only for the past 8 months as of his hearing, had never sought treatment from a specialist and never taken any medication for anxiety.  [AR at 30.]  The credibility assessment also took into account Plump's reported daily activities and that he continued to perform part time work at the medium exertion level, albeit with some accommodations.  [*Id.*]  The ALJ also found that Plump's "description of the severity of

pain and other limitations has been so extreme as to appear implausible," noting examples not supported by the medical evidence. [*Id*. at 30-31.] Finally, the ALJ observed that review of the medical records discloses no restrictions placed on Plump by his treating doctors. [AR at 31.] This analysis shows that the ALJ's assessment was based on a broad examination of all the evidence of record. The credibility determinations were reasoned and supported, and were not patently wrong. Plump's challenge does not compel a remand for further consideration of his credibility.

**New Evidence before Appeals Council**

Plump's last argument is that the Appeals Council rejected evidence submitted with his request for review at the administrative level. [DE 24 at 40.] The evidence in question is medical records of treatment in 2016 at the Elkhart Clinic and at St. Joseph Regional Medical Center, which have been provided to the court in a supplemental certification by the Commissioner. [DE 30.] The Appeals Council in fact reviewed the records, and noted that they pertained to a period of time after the ALJ's December 28, 2015 decision. [AR at 2.] "Under 20 C.F.R. §404.970(b), additional evidence submitted to the Appeals Counsel will be evaluated only if it is 'new and material' and 'relates to the period on or before the date of the [ALJ] hearing decision.'" *Stepp v. Colvin*, 795 F.3d 711, 721 (7th Cir. 2015). Plump fails to demonstrate that this medical evidence post-dating the ALJ's decision related to the earlier period, and so fails to demonstrate that the Appeals Council's decision requires a remand. Plump's suggestion that the records "bridged an evidentiary gap" so as to relate to the earlier time period comes too late,

only in his reply, and is in any event unpersuasive.  [DE 32 at 15.]  *Frazee v. Berryhill*, ___ Fed.Appx. ___, 2018 WL 2129812, at *3 (7th Cir. 2018).  Nor did the Commissioner's initial failure to include the exhibits in the administrative record filed here frustrate judicial review or otherwise constitute a basis for remand.

## Conclusion

My role is not to determine from scratch whether or not Plump is disabled and entitled to benefits.  Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence.  *Shideler v. Astrue*, 688 F.3d at 310; *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). After that, I "must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding."  *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016). Because substantial evidence supports the Commissioner's findings, they are conclusive.  42 U.S.C. §405(g). For the reasons I've explained, Plump has not demonstrated that the ALJ failed to build a logical bridge from the evidence to his conclusion that Plump does not qualify for disability, or otherwise committed reversible error.  The Commissioner's final decision must be affirmed.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Stanley Plump, Jr.'s application for Social Security Disability benefits is AFFIRMED.

The Clerk shall enter judgment in favor of defendant and against plaintiff.

10

**SO ORDERED**.

ENTERED:  August 13, 2018.

                                                   /s/ Philip P. Simon
                                                   **PHILIP P. SIMON, JUDGE**